**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

DANA MARTIN                                                                                       PLAINTIFF

vs.                                                                   Civil Action No. 3:06-cv-113-HTW-LRA

GRIFFIN INDUSTRIES, ET AL.                                                             DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

Before the court is defendant Griffin Industries, Inc.'s ("Griffin") motion for summary judgment brought pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.[1]  Griffin asks this court to grant summary judgment in favor of Griffin because, says Griffin, this lawsuit features no genuine issue of material fact and because Griffin is entitled to judgment as a matter of law regarding plaintiff Dana Martin's claims of sex discrimination[2] and retaliation[3] submitted under the First[4] and

---

[1] Fed. R. Civ. Pro. 56(b) states, in pertinent part, "a party against whom a claim, counterclaim, or cross claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[2] Title 42 U.S.C. § 2000e-2(a)(1) provides that "it shall be an unlawful employment practice for an employer [...] to discharge any individual, or otherwise to discriminate against

1

Fourteenth[5] Amendments to the United States Constitution and Title VII of the Civil Rights Act of 1964, as amended, Title 42 U.S.C. § 2000e-2.

Plaintiff Dana Martin ("Martin") opposes the motion; even so, this court is persuaded to grant the motion and dismiss this case in its entirety.

## II. Statement of Relevant Facts

Dana Martin ("Martin") worked as an "at-will"[6] sales representative for Griffin from February, 2003, through February, 2005. During the course of Martin's employment, Griffin issued Martin both written and verbal reprimands for her various behavior and performance infractions. Martin's alleged problems at work included her failing to follow instructions on completing assigned tasks, refusing to perform certain job duties, and constantly arguing with her supervisors. On several occasions, Griffin warned Martin that her employment would be terminated if Martin did not improve both her behavior

---

any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."

[3]Under Title 42 U.S.C. § 2000e-3, an employer may not discriminate against an employee because the employee has "opposed any practice made an unlawful employment practice [...] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII.

[4]U.S. CONST. amend. I. provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

[5] U.S. CONST. amend. XIV, § 1. provides, in pertinent part, that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; or deny to any person within its jurisdiction the equal protection of the laws."

[6] Under Mississippi law, an "at-will" employee may be discharged for any reason or no reason at all. *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 986, ¶ 46 (Miss. 2004); *see also Shaw v. Burchfield*, 481 So. 2d 247, 253-54. Still, this status poses no barrier for an employee who claims to have been discriminated against under federal law.

and her performance of her job duties.

Martin made several complaints to Griffin management accusing Martin's supervisors of treating her differently than Griffin's male employees and objecting to the amount of work Martin's supervisors assigned her. Further, Martin challenged both Griffin's requirement that Martin wear professional attire when the company's owners visited the office and Griffin's refusal to allow Martin to attend daily turnover meetings for managerial staff.

After an incident involving Martin's failure to follow one of Griffin's policies, one of Griffin's supervisors questioned why Martin did not properly complete the procedure. Martin supposedly responded sarcastically and told the supervisor to perform the task himself if the supervisor did not appreciate the manner in which Martin had completed the job.

Subsequently, Griffin terminated Martin. Martin requested severance pay equal to her two-month salary at Griffin. Griffin instead offered Martin two week's salary as severance pay. Martin declined the payment.

### III. Analysis of Griffin's Summary Judgment Motion

#### A. Summary Judgment Motion Standard

This court should grant Griffin's summary judgment motion if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [Griffin] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). In

determining whether a genuine dispute exists as to any material fact, the court must consider all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence. *Id.* (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The court instead makes all reasonable inferences in favor of the non-moving party. *Reeves*, at 150; [h]owever, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner,* at 343.

### B. 1st and 14th Amendment Discrimination Claims

The First Amendment prohibits governmental infringement on free speech, *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982), the free exercise of religion, *see Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000), the freedom of the press, *see Watchtower Bible and Tract Soc'y of N.Y., Inc. V. Vill. of Stratton*, 536 U.S. 150, 161-62 (2002), the right to assemble peaceably, *McCreary County v. ACLU*, 545 U.S. 844, 881-82 (2005), and the freedom to petition. *Ia*; U.S. CONST. amend. I. The First Amendment also precludes Congress from making laws respecting an establishment of religion. *Santa Fe*, 530 U.S. at 301; U.S. CONST. amend. I. "Similarly, the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities." *Rendell-Baker*, 457 U.S. at 837-38; *see* U.S. CONST. amend. XIV, § 1. Griffin is a private, non-governmental entity. Thus, Martin's claims against Griffin for discrimination and retaliation brought pursuant to the First and Fourteenth Amendments fail as a matter of law.

### C.  Title VII Claims of Sex-Based Discrimination and Retaliation

The court examines Title VII discrimination claims based principally on circumstantial evidence according to the three-pronged analytical framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Williams v. Versus Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000); *Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001).  The *McDonnell Douglas* burden-shifting framework requires a plaintiff in a Title VII lawsuit first to establish a *prima facie* case of discrimination. *See id.* at 802.  If a plaintiff successfully establishes a *prima facie* case of discrimination, "the employer must rebut a presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action." *See id; Turner,* at 345.  "Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves,* at 143.  If an employer sets forth a legitimate, non-discriminatory rationale for the adverse employment action, a plaintiff is then afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were merely pretextual. *Ia.*  If the court finds that the explanation proffered by an employer is pretextual, "that showing, when coupled with the *prima facie* case, will usually be sufficient to survive summary judgment." *Turner,* at 345 (citing *Reeves*, at 146-48).

#### 1. Martin's Sex-Based Discrimination Claims

Martin has asserted that Griffin subjected her to gender-based discrimination in

the form of a discriminatory discharge and disparate treatment. Martin, therefore, must establish a *prima facie* case by providing evidence that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and, (4) in the case of her discriminatory discharge claim, Griffin either replaced Martin with a male employee[7] or held the position open, or with regard to her disparate treatment claim, "others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (citing *Shackelford v. Deloitte & Touche,* 190 F.3d 398, 404 (5th Cir. 1999)); *see also Williams*, 218 F.3d at 485.

### a. Martin's Discriminatory Discharge Claim

In *Williams*, the plaintiff was a female sales representative who brought Title VII discriminatory discharge and disparate treatment claims against her former employer. *Id.* at 483. There, the court found that the plaintiff had established a *prima facie* case of discriminatory discharge because: (1) she was a female; (2) she had received numerous promotions and raises during her employment; and (3) her termination was an adverse employment action. *Id.* at 483-85. The court held further that even though the plaintiff may not have established that she was replaced by a male employee, she still may have established her *prima facie* case. *Id.* at 483.

In the present case, Martin, a female, is a member of a protected group and was

---

[7] The Fifth Circuit has established that "although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of the *prima facie* case under Title VII." *Williams v. Versus Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000) (citing *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985) (per curiam) ("[T]he single fact that a plaintiff is replaced by someone within the protected class does not negate the fact that the discharge was motivated for discriminatory reasons.")).

subjected to an adverse employment action when Griffin terminated her. Both parties concede that Griffin hired Martin as a sales representative and that Martin held her sales position for at least two years. The court, therefore, finds that Martin was qualified for her position.

Martin, however, has failed to establish that she was replaced by a male, or that her position was either held open after she was terminated. Griffin claims to have replaced Martin by another female after Martin lost her position. Under the holding in *Williams*, however, the court recognizes that even if Griffin replaced Martin with another female, Griffin still may have discriminatorily discharged Martin. As such, the court turns to the second prong of the *McDonnell Douglas* framework and analyzes whether Griffin has articulated a legitimate, nondiscriminatory reason for terminating Martin.

In the *Evans* case, the Fifth Circuit, after assuming that the plaintiff had established a *prima facie* case of discrimination, analyzed whether an employer-defendant had sufficiently articulated legitimate, non-discriminatory grounds for terminating the plaintiff. *Evans*, at 350-51. There, the court held that the defendant had successfully put forth legitimate justification for the plaintiff's termination where the defendant had demonstrated that the plaintiff "had a checkered disciplinary history with the [company]." *Id.* at 351 n.5 ("[The plaintiff] refused job assignments and [...] exhibited poor personal skills. [The plaintiff] blatantly cursed [her supervisor] out. She exhibited outbursts in the presence of other employees.").

Griffin has similarly established legitimate, nondiscriminatory reasons for terminating Martin. Griffin has provided the court copies of Martin's disciplinary record,

affidavits, and Martin's deposition.  Griffin demonstrates that Martin has habitually failed to follow instructions given to her by her employer regarding the manner in which Martin's tasks were to be completed.  Further, Griffin has asserted both through affidavits and through Martin's own deposition that Martin regularly argued with her supervisors and, on several occasions, refused to perform certain job duties.

Although Griffin asserts legitimate, non-discriminatory grounds for terminating Martin, Martin has failed to produce evidence to prove that Griffin's non-discriminatory justification was, in fact, pretextual.  *See ia*, at 350-51.  Martin instead simply offers conclusory allegations and unsubstantiated assertions to rebut Griffin's proffered evidence.

### b.  Martin's Disparate Treatment Claim

As noted above, Martin's claim of disparate treatment must also pass muster under the *McDonnell Douglas* burden-shifting framework. *See Davis v. Chevron*, 14 F.3d 1082, 1087-88 (5th Cir. 1994); *Okoye*, 245 F.3d at 512-13.  Again, Martin, as a qualified female employee, satisfies the first two elements of her *prima facie* discrimination claim. *Id.* at 512.  Martin also advances several bases she claims the court could find that Griffin treated other employees outside of Martin's protected group more favorably than Martin.  *Ia.* at 513.  Thus, this court must examine those alleged bases and also Martin's claim that she was subject to an adverse employment action. *Id.*

The Fifth Circuit "has a strict interpretation of the adverse employment action of the prima facie case for discrimination under Title VII." *Roberson v. Game Stop*, 152

Fed. Appx. 356, 360 (5th Cir. 2005). "An adverse employment decision must be an 'ultimate employment decision' such as hiring, firing, promoting, demoting, compensating, and granting leave." *Id.* Thus, for the purposes of Title VII disparate treatment claims, an employment decision is not adverse unless the decision affects job duties, compensation, or benefits. *Id.* The Fifth Circuit specifically has held that no adverse employment action existed where a plaintiff: (1) was not allowed to attend a meeting that in no way affected that employee's ability to adequately perform her job duties or advance in her employment; or (2) was required to wear special clothing for certain events. *Id.* at 361; *see also Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327 (5th Cir. 2005).

Martin asserts as a basis for her disparate treatment claim that she was not allowed to attend daily turnover meetings. Martin states, however, in her deposition that despite her not being permitted to attend the turnover meetings, she "was still able to perform [her] job, even with that obstacle." Martin also argues that she was treated disparately by Griffin's requiring her to wear business attire when Griffin's owners visited her office. Based on the holdings in *Roberson* and *Richardson*, this court is persuaded that these assertions do not satisfy Martin's burden of proving that she was subject to an adverse employment action. *Roberson*, 152 Fed. Appx. at 360; *Richardson*, 434 F.3d at 327.

Martin also asserts that Griffin subjected her to an adverse employment action when Griffin denied her request for severance pay after Griffin terminated her. Here, the court will assume, *arguendo*, that this assertion satisfies the final element of Griffin's

9

*prima facie* case for disparate treatment. Nonetheless, Martin admits in her deposition that Griffin, in fact, offered Martin severance pay, which Martin refused. Further, Griffin claims to be legitimately justified in offering Martin only two week's severance pay. Griffin asserts that Martin's length of employment and job performance did not qualify her for the two month's pay that Martin requested. In response, Martin offers no substantial proof that Griffin's legitimate, non-discriminatory justification for not granting her full request for severance pay is mere pretext.

### 2. Retaliation Under Title VII

Martin must establish a *prima facie* case of retaliation by proving that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Turner*, 476 F.3d at 348. "Under Title VII, an employee has engaged in protected activity if she has 'opposed any practice made an unlawful employment practice under 42 U.S.C. § 2000e-3(a).'" *Id*. The Fifth Circuit has found, for example, that an employee plaintiff had engaged in protected activity where the employee had: (1) filed a charge with the Equal Employment Opportunity Commission ("EEOC") against an employer casino for refusing to hire the employee as a poker dealer because of his race, *Jones v. Robinson Prop. Group*, 427 F.3d 987, 991, 995 (5th Cir. 2005); (2) reported a supervising physician to the director of a medical center for the supervisor's sexually harassing conduct, *Gee v. Principi*, 289 F.3d 342, 344-45 (5th Cir. 2002); and (3) initiated an intra-office complaint against a program director for gender and ethnicity discrimination, *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 189, 194 (5th Cir. 2001).

In *Turner*, the plaintiff argued that she had opposed the defendant-employer's unlawful employment practice by: (1) requesting that her direct supervisor refrain from using the term "ghetto children"; and (2) sending an e-mail to the defendant's human resources representatives complaining about poor treatment she received from her supervisor. *Id.* The Fifth Circuit upheld the *Turner* court's dismissal of the plaintiff's claims, holding that "because [the plaintiff] could not have reasonably believed that the "ghetto children" [remarks] constituted an unlawful employment practice in and of itself, [the plaintiff's] response[s] to the incident [could not] be considered protected activity." *Id.* at 349 (citing *Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000)).

Similarly, Martin has failed here to establish that she engaged in a protected activity. *Id.* Martin's complaint asserts no instances in which she opposed any unlawful employment practices committed by Griffin. Griffin, nonetheless, directs the court's attention to Martin's deposition in which Martin admits that her complaint to Griffin simply involved her grievance over the amount of work Griffin had assigned her. As in *Turner*, Martin could not have reasonably believed that the amount of work she was assigned constituted an unlawful employment practice. As such, Martin was not engaged in any protected activity and is not able to establish a *prima facie* case for retaliation.

### IV. Conclusion

Martin has not set forth sufficient evidence to support her First Amendment, Fourteenth Amendment and Title VII claims of sex-based discrimination and retaliation. After analyzing Martin's asserted claims according to the *McDonnell Douglas* burden-

shifting framework, this court finds that no genuine issue of material fact exists and that Griffin is entitled to a judgment as a matter of law.  Further, Griffin has failed to amend her Complaint to identify any of the individuals heretofore styled as John Does 1-10.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the defendants' motion for summary judgment is granted, and defendants John Does 1-10 are hereby dismissed.  The court will enter a final judgment in accordance with the local rules.

**SO ORDERED, this the 6th day of March, 2008.**

**s/ HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:06-cv-113 HTW-LRA
Memorandum Opinion and Order